UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| ARIEL SCHLOSSER, | ) | |
|---|---|---|
| *Plaintiff*, | ) | Case No. 3:20-cv-190 |
| | ) | |
| v. | ) | Judge Travis R. McDonough |
| | ) | Magistrate Judge Jill E. McCook |
| VRHABILIS, LLC, | ) | |
| | ) | |
| *Defendant*. | ) | |

**MEMORANDUM OPINION**

Before the Court is Defendant VRHabilis, LLC's ("VRH" or "VRHabilis") renewed motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. (Doc. 78.) For the following reasons, the Court will **DENY** VRH's motion.

I. **PROCEDURAL HISTORY**

Plaintiff Ariel Schlosser initiated the present action on April 29, 2020, asserting that VRH engaged in unlawful sex discrimination, created a hostile work environment, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. (Doc. 1, at 11–14.) This case proceeded to trial, beginning on February 21, 2023. At the conclusion of trial, the jury returned a verdict finding that Schlosser proved by a preponderance of the evidence that VRH subjected her to a hostile work environment because of her sex, but that she failed to prove VRH discriminated against her because of her sex or that VRH retaliated against her for engaging in protected activity. (Doc. 72, at 1–2.) The jury awarded Schlosser $58,170.00 in damages in connection with her hostile-work-environment claim. (*Id*. at 2.) On April 18, 2023, VRH filed a renewed motion for judgment as a matter of law pursuant to Federal

Rule of Civil Procedure 50(b), arguing that Schlosser failed to meet her burden of proof at trial with respect to her hostile-work-environment claim and that the proof at trial established that the *Faragher/Ellerth* defense precludes liability. (Doc. 78.) VRH's renewed motion for judgment as a matter of law is ripe for the Court's review.

## II. STANDARD OF LAW

A court may grant a renewed judgment as a matter of law in a jury trial if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis" for its verdict. Fed. R. Civ. P. 50. When ruling on a Rule 50(b) motion, a court may deny the motion outright, grant a new trial on any relevant issue, or grant judgment as a matter of law to the moving party. Fed. R. Civ. P. 50(b)(1)-(3). In deciding whether a party is entitled to judgment as a matter of law, the court should draw all reasonable inferences in favor of the non-moving party. *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2000). A Rule 50(b) motion for judgment as a matter of law should be granted "only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Randvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007) (quoting *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001)).

## III. ANALYSIS

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "A plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment." *Williams v.*

*General Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999) (citations omitted).  Hostile-work-environment claims under Title VII involve repeated conduct and require the plaintiff to demonstrate that the workplace is "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted).

To establish a hostile-work-environment claim under Title VII, a plaintiff must prove: (1) she is a member of a protected class; (2) she was subjected to unwelcome [ ] gender harassment; (3) the harassment was based the employee's protected status, such as gender; (4) the harassment unreasonably interfered with work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006).  VRH does not dispute that Schlosser is a member of a protected class, but argues that the evidence at trial does not support the jury's finding that she was subjected to harassment based on her gender, that any harassment was not severe or pervasive enough to create a hostile work environment, and that there is not a sufficient basis to for employer liability.  (*See generally* Doc. 93.)

In determining whether a defendant's sex- or gender-based conduct is sufficiently severe or pervasive to constitute a hostile or abusive work environment, courts look "at all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23; *see also Williams*, 187 F.3d at 562.  To that end, courts should not "divide[ ] and categorize[ ]" reported incidents in a way that divorces them of context and deprives them of their full force.  *Williams*, 187 F.3d at

3

562. As the Sixth Circuit has explained, "the totality-of-the-circumstances test mandates that courts consider the harassment by all perpetrators combined when analyzing whether a plaintiff has alleged the existence of a hostile environment," and, "even where individual instances of sexual harassment do not on their own create a hostile work environment, the accumulated effect of such incidents may result in a Title VII violation." *Id*. at 563–64. "A work environment viewed as a whole may satisfy the legal definition of an abusive work environment, for the purposes of a hostile environment claim, even though no single episode crosses the Title VII threshold." *Id*. at 564. Additionally, to establish that the harm was based on her sex, a plaintiff must show that but for the fact of her sex, she would not have been the object of harassment. *Id*. at 565. "[C]onduct underlying a sexual harassment claim," however, "need not be overtly sexual in nature." *Id*. "[N]on-sexual conduct may be illegally sex-based where it evinces anti-female animus," and "[h]arassing behavior that is not sexually explicit but is directed at women and motivated by discriminatory animus satisfies the 'based on sex' requirement." *Id*. (internal quotations and citations omitted).

In this case, Schlosser proffered sufficient evidence from which the jury reasonably concluded that she was subjected to harassment based on her gender while employed by VRH and that the harassment was severe and pervasive enough to constitute a hostile work environment. In 2016, VRH employed Schlosser as a diver/tender in connection with an underwater unexploded ordinance removal remediation project off the coast of Chappaquiddick Island (the "Cape Poge Project"). (*See* Doc. 89, at 16.) Schlosser was the only female hired to work on the project. (*See* Doc. 90, at 96.) At trial, the jury heard evidence that the following, among other things, occurred during Schlosser's approximately two months of employment by VRH in connection with the Cape Poge Project:

- On her first day of employment, Schlosser was asked to perform a knot test that her male counterparts were not asked to perform and was instructed to practice tying knots (Doc. 89, at 25–26);

- Schlosser received counseling for "substandard performance" for "sitting in truck tying knots" while "team was unloading equipment from small boat," even though she was practicing her knots at her supervisor's direction (*id*. at 29–31);

- After performing one dive, VRH instructed supervisors to keep Schlosser out of the dive rotation and informed her that she would not be diving again because she was not pulling her weight (*id*. at 29–30);

- After receiving counseling and seeking to discuss her performance with her team, Tyler Sanders, Schlosser's dive supervisor, told her to "stop talking" because she was "not a real diver," "never worked a real job," her "opinion doesn't matter," and she needed "to keep [her] head down" and "shut the F up" (*id*. at 36; *see also* Doc. 91, at 116–18);

- Due to the nature of the job, VRH employees lived together and drove to the work site together, and Sanders verbally abused Schlosser before work, during work, and after work (Doc. 89 at 39);

- Schlosser had her driving privileges revoked for getting a vehicle stuck, even though other male employees who got vehicles stuck did not have their driving privileges revoked (*id*. at 49–50);

- Schlosser was prohibited from diving despite outperforming male teammates who were allowed to continue diving (*id*. at 82–84; Doc. 91, at 8, 11–12, 21–22; Doc. 92, at 16, 35–38, 44–45);

- While performing tender duties, Aaron Brouse, another diver working on the project, physically pushed Schlosser and screamed obscenities at her for approximately one hour, including yelling at her that, "nobody fucking likes you," calling her a "slimy bitch," and telling her that "they will fire you before they fire me," and that "[y]ou want an enemy, I'll give you one. I'll make your life a living hell" (Doc. 89, at 54, 57, 62); and

- Supervisor John Bigos observed Brouse's behavior and did nothing to stop it (*id*. at 54; Doc. 90, at 84).

Although the foregoing is not an exhaustive list, the jury heard evidence that Schlosser was subjected to unequal treatment as compared to her male counterparts, that she was verbally abused on multiple occasions which included statements suggesting an anti-female animus, and that this abuse continued during non-work hours due to the nature of her employment. *See*

*Williams*, 187 F.3d at 564 (noting that a woman who chooses to work in the male-dominated trades does not relinquish her right to be free from sexual harassment). Viewing the totality of the circumstances surrounding Schlosser's employment by VRH in the light most favorable to her as the non-moving party, there is sufficient evidence from which the jury reasonably concluded that she was subjected to harassment based on her gender and that the harassment was severe and pervasive enough to constitute a hostile work environment.

VRH next argues that, even if Schlosser was subjected to a hostile work environment, Schlosser failed to provide evidence sufficient to impose employer liability. (*See* Doc. 93, at 8–14, 17–20.) Whether an employer is liable for a harassing employee's conduct is based, in part, on the status of the harasser. *Wyatt v. Nissan N. Am.*, 900 F.3d 400, 412 (6th Cir. 2021). If the harasser is a co-worker, the employer is liable "if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). This means that an employer is liable for coworker harassment only "if it knew or should have known of the charged sexual harassment and failed to implement prompt corrective action," thereby exhibiting "indifference or unreasonableness in light of the facts the employer knew or should have known." *Doe v. City of Detroit, Mich.*, 3 F.4th 294, 301 (6th Cir. 2021) (citations omitted). "An employer's response is generally adequate if it is reasonably calculated to end the harassment." *Id*. (internal quotations omitted).

If the harasser is a supervisor and the harassment culminates in a tangible employment action, however, the employer is strictly liable. *Id*. If a supervisor's harassment does not result in a tangible employment action, the employer "may escape liability by establishing," as an affirmative defense, that: (1) it "exercised reasonable care to prevent and correct any sexually harassing behavior," and (2) the employee "unreasonably failed to take advantage of

preventative or corrective opportunities" the employer provided. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). "[A]n employee is a supervisor for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim" of the harassment. *Vance*, 570 U.S. at 424. A "tangible employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

In this case, there was sufficient evidence presented at trial from which the jury could reasonably conclude that Tyler Sanders engaged in harassing behavior, that he was Schlosser's supervisor, and that he, individually and in coordination with other VRH supervisors, took tangible employment actions against her. Schlosser testified that, while on Sanders's dive team:

> Tyler was still having issues with me, and he was just constantly, incessantly yelling at me at work, before work. We lived together. We drove to the job site together, we drove back, and then we were at the house together. So it was just never-ending. And he would curse me out at work and was very hostile.
>
> And it got so bad that I was – there was an incident that happened and Tyler got so angry about it and he demanded – well, I was pulled aside by a superior, Paul Baril, and he said that Tyler had demanded that I move teams, that I get off his team.
>
> And this was – this was weeks of abuse kind of building up, and I finally – and nothing was being done about it. My su – everyone was a witness to me getting constantly berated at work and cursed at and, you know, told I just need to again, you know, shut the hell up.

(Doc. 89, at 39.) The jury also heard evidence that dive supervisors, like Sanders, assign duties on a day-to-day basis and decide who is going to dive, who is going to be stand-by diver, and who is going to be tender because "the diving supervisors are the best judge of who is capable." (Doc. 90, at 217; *see also* Doc. 91, at 50.) Further, the jury heard evidence that Schlosser was prohibited from diving on multiple occasions, including based on input from Sanders rating her

7

the least productive diver, even though other evidence presented at trial suggested that she was more productive than male employees who were allowed to continue diving. (Doc. 89, at 82–84; Doc. 91, at 8, 11–12, 21–22, 51; Doc. 92, at 16, 35–38, 43–51.) There was also evidence presented that the decision not to let Schlosser dive resulted in her being compensated at a lower hourly rate of pay than male counterparts who continued to dive. (*See* Doc. 89, at 22–23; Doc. 90, at 38–40.) This evidence alone is sufficient for a reasonable jury to conclude that Schlosser's supervisor harassed her and that it resulted in a tangible employment action.

As it relates to Brouse's actions, Schlosser testified that, while performing tender duties, Brouse physically pushed her and verbally berated her, including yelling at her that "nobody fucking likes you" and calling her a "slimy bitch." (Doc. 89, at 53–55, 57; Doc. 90, at 77, 81–83.) Schlosser further testified that dive supervisor John Bigos witnessed Brouse's actions but did nothing to stop the verbal abuse. (Doc. 89, at 53–55; *see also* Doc. 90, at 79, 82–84.) After the incident, Paul Baril, site supervisor for the Cape Poge project, asked Brouse and Schlosser both for a written statement about the incident, but Schlosser declined, testifying that she did not want to be blamed for another production stoppage. (Doc. 89, at 57; Doc. 90, at 78–79, 83.) Around a week later, Brouse verbally berated Schlosser, again calling her a "bitch." (Doc. 89, at 58, 62, 67.) Schlosser further testified that Brouse's abuse continued on a "daily basis," noting: "[m]y supervisor knew because they witnessed it. Everyone in the house knew because we all lived together. Everyone on-site was aware of this abuse." (Doc. 90, at 88.) Although Baril's request for a written statement from Schlosser and other actions VRH took could be viewed as attempts at corrective action, the jury also heard Schlosser testify that her on-site supervisors repeatedly witnessed Brouse's abuse and failed to intervene. Construing the evidence in the light most favorable to Schlosser, a reasonable jury could conclude that VRH was indifferent to

8

Brouse's conduct and failed to take action reasonably calculated to end the harassment, especially if the jury found Schlosser more credible than VRH witnesses.

Accordingly, there was sufficient evidence from which the jury could reasonably conclude that VRH is liable in connection with Schlosser's hostile-work-environment claim.

IV. **CONCLUSION**

For the reasons stated herein, VRH's renewed motion for judgment as a matter of law (Doc. 78) is **DENIED**. The Court hereby **REFERS** Plaintiff's motion for attorney's fees and prejudgment interest (Doc. 80) to United States Magistrate Judge Jill E. McCook. The magistrate judge is designated to submit a report and recommendation on the motion and take whatever actions she deems appropriate pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**