UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ARIEL SCHLOSSER,                    )
                                    )
            Plaintiff,              )
v.                                  )           No. 3:20-CV-190-TRM-JEM
                                    )
VRHABILIS, LLC,                     )
                                    )
            Defendant.              )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636 and the Rules of this Court, as well as referral of the United States Chief District Judge Travis A. McDonough [Doc. 96].

Now before the Court is Plaintiff's Motion for Attorney's Fees and Equitable Relief [Doc. 80]. Defendant responded in opposition to the motion [Doc. 85], and Plaintiff filed a reply [Doc. 87]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, the undersigned **RECOMMENDS** that the Chief District Judge **GRANT IN PART AND DENY IN PART** the motion [**Doc. 80**]. The undersigned recommends that Plaintiff be awarded $164,021.60 in attorney's fees, and while she is entitled to post-judgment interest under 28 U.S.C. § 1961, the undersigned recommends that her request for pre-judgment interest be denied.

## I.    BACKGROUND

On April 29, 2020, Plaintiff filed her lawsuit, alleging sex discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq*. [Doc. 1]. Chief Judge McDonough entered a Scheduling Order setting the trial for March 21, 2022 [Doc. 17 p. 3]. On November 16, 2021, the parties requested an extension to complete discovery, but Chief Judge McDonough denied that request, stating that "[t]he parties'

representations strongly suggest that they did not meaningfully attempt to conduct appropriate discovery within the time set by the Court's Scheduling Order" [Doc. 19 p. 1].[1]

On December 6, 2021, Defendant moved for summary judgment [Doc. 21], and later on February 10, 2022, moved to compel Plaintiff's responses to its First Set of Interrogatories and Requests for Production [Doc. 29]. The undersigned denied Defendant's latter motion given that the parties' discovery deadline had expired [Doc. 30].[2] On February 24, 2022, Chief Judge McDonough denied Defendant's motion for summary judgment [Doc. 32].

Upon Plaintiff's requests, Chief Judge McDonough continued the trial to February 21, 2023 [Docs. 38 and 44]. The parties proceeded to a six-day jury trial [Doc. 70]. The jury found that Plaintiff had shown by a preponderance of the evidence that Defendant subjected her to a hostile work environment [Doc. 72 p. 1]. The jury found in Defendant's favor, however, on Plaintiff's claims of sex discrimination and retaliation [*Id.* at 1, 3]. The jury awarded Plaintiff $58,170 in back pay but declined to award front pay or compensatory, nominal, or punitive damages [*Id.* at 2–4]. The Court entered the Judgment on March 21, 2023 [Doc. 76].

Following the Court's entry of the Judgment, on April 18, 2023, Defendant filed a motion for judgment as a matter of law [Doc. 78], and on April 20, 2023, Plaintiff filed her Motion for Attorney's Fees and Equitable Relief [Doc. 80]. Chief Judge McDonough denied Defendant's motion and referred Plaintiff's motion to the undersigned [Doc. 96].

Plaintiff seeks $240,550.00 in attorneys' fees, stating that this figure represents the lodestar amount for which she is entitled to under 42 U.S.C. § 1981a and 42 U.S.C. § 12205 [Doc. 81

---

[1]    Chief Judge McDonough also stated that "[t]he parties remain free to conduct additional discovery by agreement, but all of the deadlines in the Court's order shall remain the same" [Doc. 19 p. 2].

[2]    The undersigned encouraged the parties to exchange discovery and conduct depositions in accordance with their agreements [Doc. 30 p. 4].

2

pp. 2–10]. Plaintiff requests attorneys' fees for (1) Attorney Brandon Hall ("Attorney Hall"), who billed 419.6 hours at the hourly rate of $375, for a total of $157,350 [Doc. 81-1 ¶¶ 16, 23]; (2) Attorney Lauren Irwin ("Attorney Irwin"), who billed 241.6 hours at an hourly rate of $300, for a total of $72,480 [Doc. 81-1 ¶¶ 6, 11]; and (3) Emily Costanzo ("Ms. Costanzo"), a law student, who billed 107.2 hours at an hourly rate of $100, for a total of $10,720.00 [Doc. 81-3 ¶¶ 7, 9]. In support of her request, Plaintiff relies on her attorneys' declarations [Docs. 81-1 & 81-2], Ms. Costanzo's declaration [Doc. 81-3], and the Declaration of Donna J. Mikel in Support of Plaintiff's Motion for Attorneys' Fees [Doc. 81-4], and the Declaration of Anne Bennett Hunter [Doc. 81-5].

Plaintiff also requests $48,357.04 in pre-judgment interest on her back pay award [Doc. 81 p. 14]. Under Tennessee law, Plaintiff seeks 9.5% interest each year from July 2016—the date that Defendant constructively discharged her—to March 21, 2023—when the Court entered the Judgment [*Id*. at 11–14]. Plaintiff also seeks a "formal finding of the applicable rate at which [her] post[-]judgment interest shall accrue" [*Id*. at 14].

Defendant generally asserts that Plaintiff's attorneys' hours and rates are not reasonable [Doc. 85 pp. 2–17].[3] It further argues that the Court should reduce the lodestar rate to reflect the results Plaintiff obtained [*Id*. at 18–19]. With respect to Plaintiff's request for pre-judgment interest, Defendant states that it is untimely and therefore should be denied [*Id*. at 21–22]. To the extent the Court finds otherwise, Defendant asserts that Plaintiff's request for 9.5% interest is excessive and that the more appropriate rate is the federal statutory rate of 4.68% [*Id*. at 20–22]. And any pre-judgment interest award, Defendant states, should also be reduced to account for

---

[3] Defendant also "requests that the Court postpone ruling on any amount of attorney's fees and pre-judgment interest until the Court rules on [its] Renewed Motion for Judgment as a Matter of Law" [Doc. 85 p. 1]. On October 18, 2023, Chief Judge McDonough entered an order denying Defendant's motion [Doc. 96]. Defendant's request for postponement is therefore moot.

3

Plaintiff's delays in this case [*Id*. at 22]. In support of its position, Defendant filed the Declaration of George R. Arrants, Jr. [Doc. 85-1], the Declaration of Bryce E. Fitzgerald [Doc. 85-2], and Plaintiff's Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents [Doc. 85-3].

Plaintiff filed a reply, asserting that her attorneys' hours and rates are reasonable [Doc. 87 pp. 1–8]. In support of her position, Plaintiff filed her client contract with The Employment and Consumer Law Group [Doc. 87-1]. She further contends that her request for pre-judgment interest is timely [Doc. 87 pp. 8–10]. And any delay of this case, according to Plaintiff, is also attributable to Defendant's actions [*Id*. at 10].

## II. PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES

The parties do not dispute that Plaintiff is the prevailing party entitled to attorneys' fees. *See* 42 U.S.C. § 1981a(a)(1) and 42 U.S.C. § 1988.[4] Instead, they dispute the amount of attorneys' fees for which she is entitled. In making this determination, courts often employ the "lodestar method," which is "the proven number of hours reasonably expended on the case by the attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (citation omitted). The reasonableness of the hours and the rate is determined by considering twelve factors:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the

---

[4]     Plaintiff cites to 42 U.S.C. § 12205 as a basis to award attorneys' fees, but this statute is the fee provision under the Americans with Disabilities Act. 42 U.S.C. § 12205.

4

professional relationship with the client; and (12) awards in similar cases.

*Id*. at 415–16 (citation omitted).[5] "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

### A.    Hours Incurred

In determining the reasonable hours expended, "[t]here is no precise rule or formula[.]" *Hensley*, 461 U.S. at 436. The Court should consider "whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Miller v. Food Concepts Int'l, LP*, No. 2:13-CV-00124, 2017 WL 5247542, at *6 (S.D. Ohio Nov. 13, 2017) (citation omitted)). "Attorneys who seek fees have an obligation 'to maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended' on the case." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (citation omitted).

The Court is not required to "achieve auditing perfection[,]" *Fox v. Vice*, 563 U.S. 826, 838 (2011), and the Court may perform "line-by-line reductions" or percentage reductions, *Project Vote v. Blackwell*, No. 1:06-CV-1628, 2009 WL 917737, at *6 (N.D. Ohio Mar. 31, 2009) (citations omitted). "The essential goal in shifting fees (to either party) is to do rough justice," "[s]o trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838.

---

[5]    These factors were articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). Courts generally refer to them as the "*Johnson* factors."

5

Defendant raises three categories of objections to the hours Plaintiff's attorneys incurred [Doc. 85 pp. 5–13]. First, Defendant states that Plaintiff's attorneys engaged in duplicative billing and overbilled for depositions [*Id*. at 5–7]. Second, Defendant objects to Plaintiff including the time incurred by Ms. Costanzo [*Id*. at 7–9]. Third, Defendant contends that Plaintiff's attorneys billed for clerical work and for unnecessary hours [*Id*. at 9–13].

### 1. Duplicative and Overbilling for Depositions

With respect to Defendant's first objection—duplicative and overbilling for depositions, the undersigned recommends some reductions. Defendant asserts that two attorneys attended the depositions.[6] "There is no hard and fast rule allowing or preventing more than one attorney from attending a deposition, hearing, or trial on behalf of a prevailing party." *Gradisher v. Check Enf't Unit, Inc.*, No. 1:00-CV-401, 2003 WL 187416, at *4 (W.D. Mich. Jan. 22, 2003). Instead, "[t]he proper question is whether the application, for one or more attorneys, is *reasonable*, eliminating the inefficiencies or duplications that might arise from use of more than one attorney." *Id*. (quoting *Schultz v. Amick*, 955 F. Supp. 1087, 1115 (N.D. Iowa 1997)). *Compare Clements v. Prudential Protective Servs., LLC*, 100 F. Supp. 3d 604, 617 (E.D. Mich. 2015) (finding "nothing 'duplicative' with regard to having two lawyers represent [the p]laintiff" where the defendant objected to "two attorneys attending depositions"), *aff'd*, 659 F. App'x 820 (6th Cir. 2016), *with D.S. by & through R.S. v. Knox Cnty.*, No. 3:20-CV-240-CEA-DCP, 2022 WL 1284234, at *7 (E.D. Tenn. Feb. 3, 2022) (noting that the case was not "so complicated that it required the presence of two attorneys at each deposition"), *report and recommendation adopted as modified sub nom.*, *D.S. by R.S. v. Knox Cnty.*, No. 3:20-CV-240, 2022 WL 885851 (E.D. Tenn. Mar. 25, 2022).

---

[6] Defendant also objects to Emily Costanzo attending depositions, but "Plaintiff's counsel [has] voluntarily withdraw[n] her claim for Ms. Costanzo's time at the depositions" [Doc. 87 p. 2]. Ms. Costanzo billed fourteen hours for attending depositions [Doc. 81-3 p. 3]. The undersigned will reflect this reduction in its final calculations.

6

Here, other than for Plaintiff's deposition, Plaintiff has not sufficiently explained why the presence of two attorneys was reasonable. Plaintiff asserts that "both Mr. Hall and Ms. Irwin were present at each deposition as both were heavily involved in the case and both needed to not only know what each witness testified to but also observe each witness" [Doc. 87 p. 1]. In addition, she states that her counsel "had not determined who would depose each subsequent witness and both needed to be aware of prior testimony" [*Id.*]. But Plaintiff does not explain why her attorneys could not review the transcripts of the deponents, nor she does explain why the attorneys were needed to "observe each witness" [*Id.*]. *See Baker v. Nat'l Seating Co.*, No. 3:05-CV-187 (Shirley), 2006 WL 8442688, at *2 (E.D. Tenn. Mar. 28, 2006) ("The Court agrees with the defendant that the attendance of both of the plaintiff's attorneys at discovery depositions was duplicative."); *Gradisher*, 2003 WL 187416, at *4 (finding that there was no need for two attorneys to attend depositions and hearings because the legal issues were not "overly complex, only a few depositions were taken, and only a modest number of documents were involved"). Moreover, Defendant had only one attorney, Attorney Arrants, "attend[] and participate[] in each of these depositions" [Doc. 85-1 ¶ 7]. *See Wasniewski v. Grzelak-Johannsen*, 549 F. Supp. 2d 965, 976 (N.D. Ohio 2008) ("Likewise respondent objects to the presence of multiple attorneys at depositions yet as petitioner states respondent also was represented by multiple counsel at these depositions. There is no better evidence for reasonable billing judgment when petitioner's counsel's actions are mirrored by respondents' counsel.").

The undersigned therefore recommends that Ms. Irwin's time be excluded for Diane Backes's deposition (3 hours), Ron Madden's deposition (8 hours), and Scott Alogna's deposition (7 hours) given that she did not participate in these depositions. Similarly, the undersigned recommends that Mr. Hall's time be excluded from Elliott Adler's deposition (8 hours) given that

7

he did not participate in this deposition. The undersigned declines to exclude the time incurred for Plaintiff's deposition given that she represents that "[a] review of Plaintiff's deposition makes it clear that both Mr. Hall and Ms. Irwin participated in [her] deposition" [Doc. 87 p. 2].[7]

Defendant also asserts that "Plaintiff's counsel overstated their time for attendance" for three of the depositions [Doc. 85 p. 7]. Defendant states that Scott Alogna's deposition was 6 hours and 20 minutes, although counsel billed for 7 hours of time; Ron Madden's deposition was 6 hours and 57 minutes, but counsel billed for 8 hours of time; and Diane Backes's deposition was 2 hours and 53 minutes, but counsel billed for 3 hours of time [*Id.* at 6, 7]. Plaintiff represents, "As in common practice, [her] counsel conducts final reviews of deposition outlines, ensures all exhibits have been identified, and [does] general preparation prior to depositions" [Doc. 87 p. 2]. She explains that her "counsel generally spends an hour or more doing final preparations for each deposition, so if anything, [she] reduced the actual billing before each deposition in question" [*Id.*].

Considering Plaintiff's explanation and given that the additional time is not significant, the undersigned declines to recommend any reductions on this basis. As one court explained:

> Well-prepared attorneys are "working" before the start of any proceeding because they may need to assemble necessary materials, confer with clients or co-counsel, negotiate with opposing counsel, or engage in a plethora of other legitimate activities. These incidentals performed in furtherance of the proceeding need not be billed under separate task descriptions from the underlying proceeding.

*Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n*, No. 1:98-CV-479, 2008 WL 906031, at *17 (W.D. Mich. Mar. 31, 2008) (rejecting the defendant's argument that counsel billed more time for trial, depositions, pretrial conferences, and other proceedings).

---

[7]    Plaintiff states that "Mr. Hall was present as lead counsel and did defend [her] deposition, but Ms. Irwin was also present and handled Plaintiff's cross examination during the deposition" [Doc. 87 p. 2].

### 2. Ms. Costanzo's Time

Defendant objects to Ms. Costanzo's time because she is a law student [Doc. 85 p. 7]. According to Defendant, "the Sixth Circuit affirmed a district court's decision to exclude a law student's time from an attorney fee request" [*Id*. at 8 (citation omitted)].

Asserting that Ms. Costanzo is a "functional law clerk[,]" Plaintiff states that her attorneys do "not employ any paralegals or assistants so Ms. Costanzo performs a duel role as law clerk/paralegal" [Doc. 87 p. 3]. Plaintiff states that "[a]ll of the tasks performed by Ms. Costanzo required legal knowledge" [*Id.*].

There is not a per se rule precluding a law student's time for an award of attorneys' fees. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) ("Clearly, a 'reasonable attorney's fee' as used in § 1988 cannot have been meant to compensate only work performed personally by members of the bar."); *see also Villegas v. Metro. Gov't of Davidson Cnty./Nashville-Davidson Cnty. Sheriff's Off.*, No. 3:09-0219, 2012 WL 4329235, at *13 (M.D. Tenn. Sept. 20, 2012) ("Notably, reasonable attorneys' fees should compensate the work of paralegals and law clerks, in addition to the work of attorneys." (citation omitted)). Instead, the determination of whether to allow such time is within the Court's discretion. *Paeth v. Worth Twp.*, 483 F. App'x 956, 966 (6th Cir. 2012).

Here, Plaintiff is represented by two attorneys who staffed one law clerk. Given Plaintiff's counsel's representations about its staffing model, the undersigned finds that Ms. Costanzo's entries are properly included in Plaintiff's fee request. *Backpage.com, LLC v. Cooper*, No. 3:12-CV-00654, 2014 WL 12774231, at *4 (M.D. Tenn. May 22, 2014) (awarding the plaintiff the fees incurred by a law student).[8]

---

[8]     The undersigned will address Defendant's objections regarding specific entries for Ms. Costanzo's time below.

### 3.    Unnecessary Billings

Defendant makes seven objections to Plaintiff's billing entries, calling them unnecessary. First, Defendant objects to Attorney Hall's time incurred prior to Plaintiff engaging his services [Doc. 85 p. 9]. Second, Defendant objects to several entries as clerical [*Id*. at 10–12]. Third, Defendant objects to Plaintiff's attorneys billing for travel time [*Id*.]. Fourth, Defendant objects to time incurred for interoffice meetings [*Id*.]. Fifth, Defendant objects to the time entries that it calls "vague" or that contain block billing [*Id*.]. Sixth, Defendant contends that Plaintiff's counsel spent an excessive amount of time working on the response to its motion for summary judgment [*Id*. at 13]. Seventh, Defendant objects to Ms. Costanzo's time incurred during the trial [*Id*. at 9].

*Time Incurred Prior to Engagement.* Defendant states that Plaintiff seeks three hours for Attorney Hall's time, which includes 1.5 hours for the initial consultation, even though Plaintiff had not engaged his services at the time [Doc. 85 p. 9; *see also* 81-1 p. 1]. According to Defendant, the Employment and Consumer Law Group states on its website that it provides "Free Case Evaluation" [Doc. 85 p. 9 (citation omitted)]. Attorney Hall also reviewed documents for 0.75 hours and discussed the strengths and weaknesses of the case with two other individuals for 0.75 hours [Doc. 81-1 p. 9]. Stating that Defendant's argument is "without merit[,]" Plaintiff argues that "[n]early all [plaintiffs'] attorney[]s offer a free consultation as most individuals are unwilling/unable to pay money up front to determine whether they have a case" [Doc. 87 p. 5].

The undersigned declines to reduce the three hours Attorney Hall spent prior to Plaintiff signing a formal contract. The Southern District of Florida addressed the same issue and found such time reasonable. *Phiffer v. Greenstar Landscaping, Co.*, No. 21-22391-CIV, 2021 WL 6424630, at *4 (S.D. Fla. Dec. 15, 2021), *report and recommendation adopted by* No. 21-22391-CIV, 2022 WL 104265 (S.D. Fla. Jan. 11, 2022). In that case, citing to the plaintiff's

attorney's webpage, the defendant claimed "that the plaintiff should not be entitled to recover attorneys' fees for the free initial consultation he had with his attorney." *Id*. The plaintiff responded "that the work done by plaintiff's counsel [was] on a contingency basis and that by the defendants' logic, all of the work done by plaintiff's attorney would be free." *Id*. The court agreed, reasoning that "[an] initial consultation with a new client is necessary to evaluate the merits of the client's claim." *Id*. The undersigned finds the reasoning in *Phiffer* persuasive and declines to recommend that such hours be excluded from Plaintiff's fee request.

*Clerical Work*. Defendant objects to several entries, calling them "clerical" [Doc. 85 pp. 8–9, 10–13]. With respect to Ms. Costanzo's entries, Plaintiff asserts that "[e]very aspect of her involvement and each of her tasks required legal knowledge/skill" [Doc. 87 p. 3]. Similarly, Plaintiff states that "the tasks that Defendant cites as 'clerical' all require some legal knowledge" [*Id*. at 4].[9]

"Clerical work involves tasks that do not require legal knowledge, such as filing motions, preparing or reviewing summons, and receiving and filing correspondence.'" *Lay v. Astrue*, No. 10–346–DLB, 2012 WL 5988822, at *5 (E.D. Ky. Nov. 29, 2012) (citations omitted); *see also In Backpage.com, LLC*, 2014 WL 12774231, at *5 ("Courts have also determined that the following tasks are clerical and thus not recoverable under a motion for attorney's fees: copying files, organizing documents, filing documents, issuing summons and service of process, mailing correspondence, and summarizing depositions." (citations omitted)). "[F]ee requests for tasks that are purely clerical or secretarial in nature are not compensable." *B.H. by & through L.H. v. Obion*

---

[9]    Plaintiff has voluntarily withdrawn the hours that Attorney Hall incurred on February 8, 2023, and February 16, 2023—a total of 1.3 hours—and the hours that Attorney Irwin incurred on March 21, 2022—a total of 0.2 hours—because they are clerical in nature [Doc. 87 p. 4]. The undersigned will include these reductions in the final calculations.

11

*Cnty. Bd. of Educ.*, No. 18-1086-STA-JAY, 2021 WL 5531671, at *3 (W.D. Tenn. Nov. 24, 2021) (citation omitted).

The undersigned has reviewed the challenged entries [*see* Doc. 85 pp. 8–9, 10–12] and finds the following to be clerical and not compensable:[10]

| Timekeeper | Date | Time Entry | Time |
|---|---|---|---|
| Hall | 7/31/2020 | Filed unexecuted summons and alias summons | 0.25 |
| Hall | 2/18/2023 | Pick Client up from Airport | 1.5 |
| Hall | 2/20/2023 | Back-up all docs to hard drive | 3.0 |
| Costanzo | 2/20/2023 | Pick up docs from Fedex and Staples | 1.0 |
| Hall | 2/28/2023 | Drove Ariel back to Nashville | 0.3[11] |
| Irwin | 3/8/2023 | Discussion with Frances and Brandon re: credit card receipts/bills etc. | 2.5 |

These tasks do not involve legal skill but instead could be accomplished by non-lawyers who were available to assist Plaintiff's counsel. *Jenkins*, 491 U.S. at 288, n.10 ("It is appropriate to distinguish between legal work . . . and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate." (citation omitted)); *see also Miller v. Davis*, 267 F. Supp. 3d 961, 997 (E.D. Ky. 2017) (excluding the time for attorneys filing notices of appearances and motions because they were clerical tasks and not compensable), *aff'd sub nom. Miller v. Caudill*,

---

[10]    With respect to the time billed on February 20, 2023, Ms. Costanzo and Attorney Hall used block billing, so it is difficult to discern how much time was spent on these tasks. In light of the Supreme Court's guidance, *see Fox*, 563 U.S. at 838 (explaining that courts are not required to "achieve auditing perfection" and that the goal "is to do rough justice"), the undersigned has recommended that Ms. Costanzo's time be reduced by one hour and that Attorney Hall's time be reduced by three hours given the nature of the tasks.

[11]    Attorney Hall's entry is 2.3 hours in total; however, the complete entry is "Drove Ariel back to Nashville airport and home" [Doc. 81-1 p. 15]. It appears to the undersigned that Attorney Hall drove from Chattanooga to Nashville [*See* Doc. 68]. The Court will discuss the remaining two hours below.

12

936 F.3d 442 (6th Cir. 2019); *Clark v. Shop24 Glob. LLC*, No. 2:12-CV-802, 2016 WL 3639893, at *5 (S.D. Ohio July 8, 2016) (noting that courts in the Sixth Circuit have declined to award fees for clerical work even when the plaintiff is represented by a small firm or a solo practitioner (collecting cases)), *report and recommendation adopted as modified by* No. 2:12-CV-802, 2016 WL 5533585 (S.D. Ohio Sept. 30, 2016); *Gibson v. Scott*, No. 2:12-CV-1128, 2014 WL 661716, at *4 (S.D. Ohio Feb. 19, 2014) ("A 'purely clerical or secretarial' activity is not billable at a paralegal's rate, or at any rate at all, because such tasks are included in office overhead (citations omitted)); *EEOC v. Whirlpool Corp.*, No. 3:06-CV-0593, 2011 WL 3321291, at *7 (M.D. Tenn. Aug. 2, 2011) ("[T]he Court will decline to award fees to [the p]laintiff for hours billed by her attorneys that amount to clerical tasks and constitute the overhead cost normally expected in legal practice.").[12]

Travel Time. Defendant also objects to the time incurred for traveling, stating that some courts will not allow it and other courts reduce the hourly rate for travel time [Doc. 85 p. 10 n.5 (citation omitted)]. Plaintiff responds that the Eastern District of Tennessee has allowed travel time [Doc. 87 pp. 5–6]. And here, she states that she "attempted to find counsel in Knoxville but each firm either declined her case or did not return her calls" [*Id*. at 6]. Given that, "she sought counsel

---

[12]    Ms. Costanzo billed for summarizing depositions on February 17, 2023, and February 19, 2023 [Doc. 81-3 p. 1]. Defendant states that summarizing depositions constitutes clerical work [Doc. 85 p. 9 n.3 (citations omitted)]. In *Bryant v. Dollar General Corp.*, No. 3:05-0840, 2007 WL 1875825, at *2 (M.D. Tenn. June 26, 2007), the court disallowed an attorney's time for summarizing depositions, noting that it was "more in line of a clerical function which could have been easily handled by a paralegal." Plaintiff's counsel did not employ any paralegals, so the undersigned will not recommend any reductions for Ms. Costanzo summarizing the deposition transcripts. *See Almanza v. Barr*, No. 3:15-CV-389-TAV-HBG, 2019 WL 13159729, at *14 (E.D. Tenn. Aug. 5, 2019) (recommending that fees not be reduced for a paralegal's and law student's time for summarizing deposition transcripts).

in Nashville" [*Id.*]. Plaintiff notes that the only travel time was for the pretrial conference and for the trial [*Id.*].

"The Sixth Circuit has often found travel time to be compensable if determined by the district courts to be the local practice regarding payment for travel time." *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 372 (6th Cir. 2014) (quoting *Monroe v. FTS USA, LLC*, No. 2:08–cv–02100–JTF–cgc, 2014 WL 4472720, at *7 (W.D. Tenn. July 28, 2014)); *see also Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991) ("We believe that matters of this sort [travel time] are within the discretion given the district court, which has greater familiarity with local practice than does this court, and we will not reverse on this record.")."Courts in this Circuit regularly reduce travel compensation to fifty percent of the reasonable hourly rate for counsel." *Grant v. Shaw Env't, Inc.*, No. 3:08-CV-350, 2013 WL 1305599, at *8 (E.D. Tenn. Jan. 30, 2013), *report and recommendation adopted by* No. 3:08-CV-350, 2013 WL 1305596 (E.D. Tenn. Mar. 28, 2013). "Such reductions are made where the movant has not demonstrated that out-of-town counsel is necessary and to account for the fact that counsel cannot afford the litigation their full attention while they are traveling." *Id.*; *see also Am. C.L. Union of Tenn. v. Hamilton Cnty.*, No. 1:02-CV-026, 2002 WL 1377910, at *2 (E.D. Tenn. June 18, 2002) (finding travel time not appropriate where local counsel could have handled the case but "[r]ecognizing that under appropriate circumstances courts may award attorney's fees for travel time").

While Plaintiff states that she attempted to find Knoxville counsel, she does not offer any evidentiary support to establish that she had to retain Nashville counsel. *Jones v. Babcock & Wilcox Tech. Servs. Y-12, LLC*, No. 3:11-CV-00531-PLR-HBG, 2016 WL 4691294, at *5 (E.D. Tenn. August 8, 2016) ("At the hearing, Plaintiff stated that he had to obtain counsel in Nashville because he could not locate Knoxville counsel. Based on this slim proffer, the

14

undersigned finds that the Plaintiff failed to establish that out-of-town counsel was necessary.").[13] But even so, there is no evidence before the Court that while driving, Plaintiff's attorneys worked on this matter. And while traveling was required, it does not involve any legal skill. The undersigned therefore recommends that Attorney Hall's travel time of 14.5 hours and Attorney Irwin's travel time of four hours be billed at 50% of their recommended hourly rate.[14] *See EEOC v. Dolgencorp, LLC*, No. 3:14-CV-441-TAV-HBG, 2017 WL 9517513, at *8 (E.D. Tenn. Aug. 7, 2017) (declining to recommend that time for traveling should be excluded because the trips were insignificant and the only significant time was the travel time incurred to Nashville in order to attend a mediation, and plaintiff's attorneys represented that they used the traveling time to work on the case), *report and recommendation adopted by* 277 F. Supp. 3d 932 (E.D. Tenn. 2017), *aff'd*, 899 F.3d 428 (6th Cir. 2018); *Jones*, 2016 WL 4691294, at *5 (recommending that some travel time be reduced based on the plaintiff's failure "to establish that out-of-town counsel was necessary" but not reducing the time for traveling to the trial because "counsel explained at the hearing that they discussed and prepared for the trial during the entire trip"), *report and recommendation adopted by* 2016 WL 4690398 (E.D. Tenn. Sept. 7, 2016); *cf. Gunter v. Bemis Co., Inc.*, No. 4:16-CV-00037-TRM-CHS, 2019 WL 3526337, at *7 (E.D. Tenn. July 25, 2019) (recommending that travel time not be reduced "[b]ecause counsel for the parties were located in Nashville but the case was transferred to the Chattanooga courthouse, the lawyers had to make frequent trips to both Winchester and Chattanooga for trial preparation and the trial itself" and "[w]hile they were on the road traveling, counsel were unable to work on other matters"), *report*

---

[13] Even if she retained Knoxville counsel, such counsel would still need to travel given that the pretrial conference and the trial were in Chattanooga.

[14] Attorney Hall regularly billed 2.5 hours for traveling to Chattanooga and Nashville [*See* Doc. 81 pp. 14–15], while Attorney Irwin billed two hours [Doc. 81-2 p. 8].

*and recommendation denied as moot*, *Gunter v. Bemis Co., Inc.*, No. 4:16-CV-00037-TRM-CHS, Doc. 171 (E.D. Tenn. Sept. 17, 2019).

*Interoffice Meetings.* Defendant also objects to the time spent attending interoffice meetings. Specifically, Defendant objects to 3.7 hours of Attorney Irwin's time, calling it duplicative of Attorney Hall's time [*See* Doc. 85 pp. 10–12]. In addition, Defendant states that Ms. Costanzo's billing contains several interoffice meetings [*Id.* at 8–9]. Plaintiff responds that while "Defendant takes issue with multiple attorney's and/or law clerk attending internal meetings to discuss the case[, i]t is common practice for attorneys and their staff to have meetings to discuss cases and prepare for trial" [Doc. 87 p. 5].

"There is no hard-and-fast rule as to how many lawyers can be at a meeting or how many hours lawyers can spend discussing a project." *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 706 (6th Cir. 2016) (quoting *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007)). After reviewing the hours spent in this litigation, the undersigned does not find any of the time spent for interoffice meetings to be unreasonable or excessive [*See* Docs. 81-1 pp. 9–15; 81-2 pp. 6–8; 81-3 pp. 3–4]. And notably, the time entries describe the subject matter of the meetings. *See The Ne. Ohio Coal. for the Homeless*, 831 F.3d at 706 (declining to reduce the hours for interoffice meetings, in part, because of the "[p]laintiffs' detailed documentation"). The undersigned therefore finds Defendant's objection on this basis not well taken.

*Block Billing.* Defendant objects to Plaintiff's use of block billing [Doc. 85 pp. 10–12].[15] Plaintiff does not respond to this objection.

---

[15]     As part of its argument, Defendant also objects to Attorney Hall's time for "Lauren and Emily's notes" on February 9, 2023, calling it "[v]ague" [Doc. 85 p. 10]. But Plaintiff clarifies that this entry is the result of a formatting error and that the entry should have been: "Research potential jury pool, create spreadsheet of pros/cons of each juror, compare my notes with Lauren and Emily's notes" [Doc. 87 p. 4]. In light of this clarification, the undersigned does not find this entry vague.

16

"Block billing involves identifying more than one task in a single billing entry." *Gibson v. Scott*, No. 2:12-cv-1128-GCS, 2014 WL 661716, at *4 (S.D. Ohio Feb. 19, 2014). It is "not *per se* improper as the underlying question is whether the fee is reasonable." *Id*. (citation omitted); *see also Pittsburgh & Conneaut Dock Co. v. Director, Office of Workers' Comp. Programs*, 473 F.3d 253, 273 (6th Cir. 2007) (holding that the proper question is whether the fee is reasonable and noting that other "circuits have rejected block-billing objections to fee awards in a number of contexts"). Courts may reduce fees "where billing records 'lumped' together time entries under one total so that it was 'impossible to determine the amount of time spent on each task.'" *Imwalle*, 515 F.3d at 553 (quoting *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1021 (N.D. Ohio 1997)). But courts have "upheld an award of attorney fees and found billing records to be adequate where entries made by counsel 'were sufficient even if the description for each entry was not explicitly detailed[.]'" *Id*. (quoting *McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005)).

Upon a review of the billing entries in this case [*see* Docs. 81-1 pp. 9–15; 81-2 pp. 6–8; 81–3 pp. 3–4] and Defendant's objections thereto [Doc. 85 pp. 10–12],[16] the undersigned finds the descriptions sufficient, despite counsels' use of block billing. The undersigned therefore declines to recommend any reductions for counsels' use of block billing.

*Excessive Time.* Defendant objects to the "excessive amount of time working on the response to Defendant's Motion for Summary Judgment" [Doc. 86 p. 13]. Defendant states that Plaintiff's attorneys spent 135.4 hours on the response (67.1 hours by Attorney Hall; 53.3 hours by Attorney Irwin; and 15 hours by Ms. Costanzo) [*Id*. at 13]. Plaintiff does not respond to this objection.

---

[16]     Defendant objects to only four entries on this basis [Doc. 85 pp. 11–12]. But the undersigned has recommended the time reflected in these entries be reduced for other reasons.

The undersigned finds the time spent on the response unreasonable. Plaintiff's attorneys spent the equivalent of approximately seventeen eight-hour workdays drafting the response to the motion for summary judgment, which was twenty-four pages plus a signature page [*See* Doc. 23]. The undersigned recommends a 30% reduction in the amount of time the attorneys and Ms. Costanzo spent in working on the response to the motion for summary judgment. This reduction will result in approximately twelve, eight-hour working days for preparing the response to the motion for summary judgment. And the undersigned's recommendation will reduce Attorney Hall's hours by 20.13; Attorney Irwin's hours by 15.99; and Ms. Costanzo's hours by 4.5.

*Ms. Costanzo's Attendance at Trial.* Defendant objects to Ms. Costanzo's time incurred at trial because she "did/could not participate in the trial and Plaintiff was already represented by two capable attorneys at trial" [Doc. 85 p. 9]. Plaintiff claims that Ms. Costanzo was "absolutely invaluable at trial as she took detailed notes throughout her time at the trial" [Doc. 87 p. 3]. Plaintiff states that Ms. Costanzo "directed counsel to prior testimony in deposition in real time, suggested follow-up questions based on witness testimony, and was essential in helping with counsel's trial preparation each morning and night" [*Id.*].

The Court has reviewed Ms. Costanzo's billing entries for trial-related activities [Doc. 81-3 pp. 3–4], and the undersigned finds Plaintiff has not sufficiently explained why her presence was necessary, given that Plaintiff had two attorneys present during the trial. *Thomas v. Broward Cnty. Sheriff's Off.*, No. 19-61324-CIV, 2022 WL 2048383, at *3 (S.D. Fla. May 23, 2022), (recommending the law students' time for trial preparation and trial attendance be excluded), *report and recommendation approved by* 2022 WL 2046918 (S.D. Fla. June 7, 2022). There were only five witnesses who testified, and this case was not document intensive [*See* Doc. 61-1]. *See Baker*, 2006 WL 8442688, at *3 ("The Court agrees that the paralegal's presence at trial was not

necessary, especially in light of the fact that two experienced attorneys were in attendance at all times."). The undersigned therefore recommends that Ms. Costanzo's time entry on February 20, 2023, be reduced by two hours to account for traveling to Chattanooga, 16 hours be excluded for attending trial, and that the work performed from the start of the trial to the conclusion of the trial be excluded (10 hours) [*See* Doc. 81-3 pp. 3–4].

### B.     Hourly Rate

In determining the appropriate hourly rate to apply, the district court must consider the prevailing market rate in the relevant community, which for fee purposes, is generally the legal community within the court's territorial jurisdiction or venue. *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013) ("A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the '*prevailing market rate in the relevant community*.'" (quoting *Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343, 349 (6th Cir. 2000))); *see also Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020) ("[I]t's called the 'community market rule' for a reason[.]"); *but see Smith v. Serv. Master Corp.*, 592 F. App'x 363, 369 (6th Cir. 2014) ("There is some Sixth Circuit authority that the relevant market need not be local to the venue."); *McHugh v. Olympia Ent., Inc.*, 37 F. App'x 730, 740 (6th Cir. 2002) ("Generally district courts are free to look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases." (citation omitted)), *amended on denial of reh'g*, 41 F. App'x 758 (6th Cir. 2002) (citation omitted).

The prevailing market rate "may not, however, exceed the amount necessary to cause competent legal counsel to perform the work required." *Brooks v. Invista (Koch Indus.)*, No. 1:05-CV-328, 2008 WL 304893, at *3 (E.D. Tenn. Jan. 30, 2008) (citations omitted). As the United States Court of Appeals for the Sixth Circuit has explained:

> The statutes use the words "reasonable" fees, not "liberal" fees. Such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region. Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate.

*Coulter v. State of Tenn.*, 805 F.2d 146, 149 (6th Cir. 1986) (footnote omitted), *abrogated on other grounds by The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016).

Plaintiff seeks $375 per hour for Attorney Hall, $300 per hour for Attorney Irwin, and $100 per hour for Ms. Costanzo. Defendant objects to the attorneys' hourly rates stating that they reflect rates "of attorneys at the highest level of demand, success, and sophistication in this market" and that Plaintiff has not adequately supported her requested rates [Doc. 85 p. 14]. Defendant also states that Ms. Costanzo's hourly rate should be reduced [*Id*. at 17 (citations omitted)].

Attorney Hall has "been continuously licensed to practice law since 2015" and is "currently admitted to practice law in all federal district courts in Tennessee, the Sixth Circuit Court of Appeals, as well as in Tennessee state court" [Doc. 81-1 ¶ 4]. "[His] practice focus exclusively on employment law, including the Title VII of the Civil Rights Act," and other employment-related federal and state laws [*Id*.]. "Prior to being admitted to the Tennessee bar, [he] served as the senior paralegal for The Higgins Firm in its employment law division from 2010 until 2015" [*Id*. ¶ 5]. And he has "litigated more than 100 cases in federal court" since being licensed [*Id*. ¶ 8]. He is "a member of good standing with the National Employment Lawyers Association, the Tennessee Employment Lawyers Association, the American Bar Association Labor & Employment Law Section, and the Tennessee Bar Association Labor & Employment Section" [*Id*. ¶ 9]. Attorney Hall's custom hourly rate is $375, but he takes most of his cases—95%—on a contingency basis

[*Id.* ¶ 11]. He points out that in October 2022, his rate was recently approved during an arbitration hearing [Doc. 81 p. 5; Doc. 81-1 ¶ 16].

Attorney Irwin has practiced law since 2020 and has "been lead or co-counsel in over 50 cases in federal court, as well as numerous state courts and arbitration hearings" [Doc. 81-2 ¶ 2]. According to Attorney Irwin, she "customarily charge[s] $300 per hour for legal services" [*Id.* ¶ 1]. "[O]ver 90% of the work that [she] perform[s] is on a contingency fee basis" [*Id.* ¶ 4]. She points out that in October 2022, her rate was recently approved during an arbitration hearing [Doc. 81 p. 5; Doc. 81-2 ¶ 6].

Ms. Costanzo is "a third-year law student at Belmont University College of Law and a law clerk employed by the Employment Consumer Law Group" [Doc. 81-3 ¶ 1]. She has worked there "since Spring 2021, and in that time has done work on several civil rights cases throughout all stages of litigation, including two federal trials and one arbitration hearing" [*Id.* ¶ 2]. She states that "[t]his rate is reasonable in the circumstances and in light of the prevailing rate charged in the community for legal assistant work" [*Id.* ¶ 7]. She points out that her rate was recently approved in an arbitration hearing in Nashville, Tennessee [*Id.*].

In support of the hourly rates, Plaintiff relies on declarations from other attorneys, Attorney Mikel [Doc. 81-4] and Attorney Hunter [Doc. 81-5]. But Attorney Mikel, who has been practicing law since 2000, "seek[s] reimbursement of $400 per hour effective in 2021" [Doc. 81-4 ¶ 8]. In 2018, when she had been practicing for 18 years, the Court awarded her "$350 per hour and [her] co-counsel (who then had 15 years of experience), Mr. Hamill, at $300 per hour" [*Id.* (citation omitted)]. And Attorney Hunter, who has been licensed since 1995, "customarily charge[s] and receive[s] $475 per hour for legal services" [Doc. 81-5 ¶ 20]. She notes that in July 2019, this Court found her rate of $375 from 2015–2019 to be reasonable [*Id.* ¶ 16 (citation omitted)]. These

declarations do not support Plaintiff's requested $375 per hour for Attorney Hall, who has practiced for eight years, and $300 per hour for Attorney Irwin, who has practiced for three years. And while Attorney Hall and Attorney Irwin state that their customary rates are $375 and $300, respectively, they are located in Nashville, Tennessee, not Knoxville.[17]

Defendant submits that its counsel, Attorney Arrants, "who has been licensed since 1987, had an hourly rate of $270 in this case, and [Attorney] Fitzgerald, who has been licensed since 2014, had an hourly rate of $225 in this case" [Doc. 85 pp. 15–16 (citing Doc. 85-1 ¶¶ 5, 6; Doc. 85-2 ¶¶ 5, 7)].[18] Defendant also cites to the Clio Legal Trends Report 2022, which "indicates that the average hourly rate for Tennessee attorneys in 2022 was $247 for lawyers, $229 for law firms" [*Id.* at 15 (citation omitted)]. Further, according to Defendant, the Knoxville Bar Association 2021 Economics and Law Practice Management Survey ("KBA Survey") shows: (1) "only 9.6% of attorneys with 5 years or less experience have an average hourly rate above

---

[17]    Plaintiff has not requested that the Court award out-of-town rates. But even if she had, the Court of Appeals for the Sixth Circuit has explained that "[w]hen fees are sought for an out-of-town specialist, courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995) (citation omitted). While Plaintiff states that she "attempted to find counsel in Knoxville but each firm either declined her case or did not return her calls" [Doc. 87 p. 6], she offered no evidentiary support for this statement. *See Hadix*, 65 F.3d at 535 ("A corollary of this rule is that judges may question the reasonableness of out-of-town attorney's billing rate if there is reason to believe that competent counsel was readily available locally at a lower charge or rate."); *see also Jones*, 2016 WL 4691294, at *5 ("At the hearing, Plaintiff stated that he had to obtain counsel in Nashville because he could not locate Knoxville counsel. Based on this slim proffer, the Court finds that the Plaintiff failed to establish that out-of-town counsel was necessary."). To the extent Plaintiff's attorneys' rates are Nashville rates, the undersigned declines to award them.

[18]    Some courts find defense counsel's billings records are relevant in light of the defendant's objections, while other courts do not. *See Almanza v. Barr*, No. 3:15-CV-389-TAV-HBG, 2019 WL 2062505, at *4 (E.D. Tenn. May 9, 2019) (citations omitted).

$250, with 62% having an average rate between $176 and $250[,]" (2) "for attorneys with 6–10 years of experience, only 10.4% have an average hourly rate above $300, with 65.4% between $201 and $300" [*Id.* (citation omitted)].

Plaintiff points out that the Clio Legal Trends Report "does not take into account the experience of the attorney or any other *Johnson* factors" [Doc. 87 p. 7 (citation omitted)]. Citing to the *Laffey* Matrix, Plaintiff states that "the hourly rate for . . . attorneys with 8 years of experience and 3 years of experience are $733 and $413, respectively" [*Id.* (citation omitted)].

The undersigned finds that neither the Clio Legal Trends Report nor the *Laffey* Matrix helpful here [*See* Doc. 87 p. 8 ("The Clio Trends Report only asks individuals to enter the State in which he or she practices, the area of law she practices, and the individual[']s hourly rate.")]. *See Herring v. SCI Tenn. Funeral Servs., LLC*, No. 2:15-CV-00280, 2018 WL 2406008, at *7 (E.D. Tenn. May 4, 2018) ("While the Court has considered the [*Laffey* Matrix], the Court does not find that it provides much insight into what a reasonable fee would be in East Tennessee." (collecting cases)). Based on the Court's knowledge and experience in handling similar fee requests and the KBA Survey,[19] *see Van Horn v. Nationwide Pro. & Cas. Ins.*, 436 F. App'x 496,

---

[19]     *See Gathering Spot, LLC v. Gathering Spot at Burlington Vill. LLC*, No. 3:22-CV-7-TRM-JEM, 2023 WL 3612399, at *5 (E.D. Tenn. May 1, 2023) (recommending the following attorneys' rates in a federal trademark infringement case: $315 per hour for an attorney with sixteen years of experience; $300 per hour for an attorney for with twelve years of experience; $250 per hour for an associate who did not provide his years of experience; $275 for an attorney who did not provide his years of service but provided his professional background), *report and recommendation adopted by* No. 3:22-CV-7, 2023 WL 3611541 (E.D. Tenn. May 23, 2023); *Knox Trailers, Inc. v. Clark*, No. 3:20-CV-137-TRM-DCP, 2022 WL 4372350, at *4 (E.D. Tenn. Sept. 21, 2022) (awarding similar rates as in *Gathering Spot, LLC* in a case alleging breach of fiduciary duty, intentional interference with business relations, unfair competition, misappropriation of trade secrets, and civil conspiracy); *Knisley v. Johnson*, No. 3:21-cv-420, Doc. 24 (E.D. Tenn. Aug. 10, 2022) (in an unjust enrichment case, awarding an attorney with fourteen years of experience $300 per hour given that he provided no details regarding his professional experience); *ERMC v. Millertown*, 3:19-cv-407 & 408, Doc. 75 (E.D. Tenn. Aug. 1, 2022) (explaining that an attorney who practiced for seven years charged $228.26, $260.60, and $298.90 from 2019 to 2021 in a breach of contract case); *Almanza v. Barr*, No. 3:15-CV-389-TAV-HBG, 2019 WL 13159729, at

499 (6th Cir. 2011) (explaining that a district court may look to "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests"), the undersigned recommends $290 per hour for Attorney Hall and $230 for Attorney Irwin.[20]

With respect to Ms. Costanzo's hourly rate of $100, the undersigned declines to recommend a reduction. Ms. Costanzo states that this rate is reasonable "in the community for legal assistant work" [Doc. 81-3 p. 2]. While it is not clear whether the relevant community is Nashville or Knoxville, the undersigned finds this rate to be similar to rates awarded in previous cases. *See Almanza v. Barr*, No. 3:15-CV-389-TAV-HBG, 2019 WL 13159729, at *10 (E.D. Tenn. Aug. 5, 2019) (recommending that the senior legal assistants and the third-year law clerk be awarded $95); *cf. Knisley v. Johnson*, No. 3:21-CV-420-KAC-DCP, 2022 WL 17718637, at *7 (E.D. Tenn. July 22, 2022), *report and recommendation adopted by* No. 3:21-CV-420-KAC-DCP, 2022 WL 17718636 (E.D. Tenn. Aug. 10, 2022) (recommending $85 per hour for paralegal);

---

*9 (E.D. Tenn. Aug. 5, 2019) (recommending an attorney who graduated law school in 2006 but had been practicing employment law for eight years be awarded $260.00 per hour); *Vaughn v. Parkwest Med. Ctr.*, No. 3:15-CV-228, Doc. 117 (E.D. Tenn. Feb. 15, 2019) (recommending award of $290 per hour for worked performed 2014 through 2018 for an attorney who had practiced approximately twelve years), *report and recommendation adopted by* 2019 WL 1290877, at *1 (E.D. Tenn. Mar. 20, 2019); *EEOC v. Dolgencorp, LLC*, No. 3:14-CV-441-TAV-HBG, 2017 WL 9517513, at *5 (E.D. Tenn. Aug. 7, 2017) (recommending $350.00 per hour for a litigator with twenty-four years of experience and $250.00 per hour for an attorney who graduated law school in 2006), *report and recommendation adopted by* 277 F. Supp. 3d 932 (E.D. Tenn. 2017), *aff'd*, 899 F.3d 428 (6th Cir. 2018); *Jones v. Babcock & Wilcox Tech. Servs. Y-12, LLC*, No. 311-CV-00531-PLR-HBG, 2016 WL 4691294, at *1 (E.D. Tenn. Aug. 8, 2016) (recommending award of $345.00 per hour in a civil rights case where the attorney had thirty-eight years of experience), *report and recommendation adopted by* 2016 WL 4690398 (E.D. Tenn. Sept. 7, 2016).

[20] Attorney Hall and Attorney Irwin also state that the Court should consider additional factors in determining the reasonable rate [*See* Doc. 81-1 ¶¶ 18–19; Doc. 81-2 ¶ 7]. But the additional factors they cite are subsumed by the *Johnson* factors, which the undersigned has evaluated in making her recommendation.

*Gunter*, 2019 WL 3526337, at *8 ("Based upon the Court's own experience with customary paralegal rates in this District, the Court will recommend a $75.00 hourly rate as an appropriate paralegal rate—especially given that Plaintiff has provided no information about the experience of the paralegals whose time is being billed."). In declining to recommend her rate be reduced, the undersigned has also considered her length of employment at the Employment and Consumer Law Group and her work on two federal trials and an arbitration [*See* Doc. 81-3 ¶¶ 2–3]. The undersigned has also reviewed her billing entries [*see* Doc. 81-3 pp. 3–4] and finds that this rate reasonably compensates her for the tasks that she performed.

Finally, Defendant asserts that "Plaintiff's counsel seeks fee awards at their 'current hourly rate as opposed to their rate at the time the case was filed'" [Doc. 85 p. 14 (quoting Doc. 81 p. 4)]. While the undersigned has declined Plaintiff's requested rates, the undersigned will not apply historic rates. The decision to apply historic or current billing rates is within a district court's discretion "so long as it explains how the decision comports with the ultimate goals of awarding reasonable fees." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617–18 (6th Cir. 2007). Here, Plaintiff's attorneys accepted this case on a contingency basis [*See* Doc. 87-1]. "Compensation for this delay is generally made 'either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.'" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010) (quoting *Jenkins*, 491 U.S. at 282); *L.H. v. Hamilton Cnty. Dep't of Educ.*, 356 F. Supp. 3d 713, 723 (E.D. Tenn. 2019) ("The Court finds that application of current billing rates is appropriate here because this litigation has been ongoing over a span of years and the current rates help to counterbalance the delay in payment which has occurred.").

Defendant urges the Court to decline to use current rates given that the case was delayed during the COVID pandemic and because of Plaintiff's requests to continue the trial [Doc. 85

25

p. 14 (citation omitted)]. But the COVID pandemic does not counter the fact that Plaintiff's attorneys were not paid for three years, and Plaintiff's requests for trial continuances "were not the result of negligence or intentional delay" [Doc. 87 p. 7; *see also* Docs. 36 and 40].[21]

### C. Reducing the Lodestar Amount

Defendant seeks to reduce the lodestar rate because "this case was not particularly novel or complex" [Doc. 85 p. 18]. In addition, compared to Plaintiff's sought after damages— $309,76.24—Defendant claims that she was not successful given that the jury awarded only $58,170.00 in back pay [*Id*. at 19]. Defendant further asserts that Plaintiff was successful on only one out of three claims [*Id*.]. Defendant contends that Plaintiff "is seeking attorney fees in [the] amount [of] four times greater than the value of her damages recovery" [*Id*.].

Plaintiff states that she "achieved excellent results in light of the facts and circumstances of the case" [Doc. 81 p. 8]. She asserts that "at the six-day trial, [she] examined five witnesses, four of whom were managers employed by Defendant" [*Id*.]. According to Plaintiff, the hostile work environment claim was "arguably the most difficult claim to prove" and that she obtained "substantial damages" [*Id*.].

"[T]he lodestar figure is presumed to be the reasonable fee to which counsel is entitled[,]" *Imwalle*, 515 F.3d at 552 (citation omitted), and the undersigned declines to depart from it here. With respect to Defendant's claim that this case was not novel or complex, the undersigned has considered these factors when assessing the hourly rates and comparing them to awards in similar cases. And while Defendant asserts that Plaintiff had limited success, the Sixth Circuit has stated, "We have "repeatedly rejected mechanical reductions in fees based on the number of issues on

---

[21]     Plaintiff filed the Declaration of Donna Mikel, who states that there should be an increase in attorney-fee rates over time [Doc. 81-4 ¶ 4 n.1 (citation omitted)]. The undersigned finds the recommended rates reflect an increase over time [*See* Doc. 85 p. 15 (citing to the KBA Survey)].

which a plaintiff has prevailed." *Id*. at 554 (quoting *Deja Vu of Nashville v. Metro. Gov't of Nashville and Davidson Cnty*., 421 F.3d 417, 423 (6th Cir. 2005)). The undersigned finds Defendant's objection not well taken. *Id*. at 555 (declining to reduce the lodestar calculation even though the plaintiff sought a total of $800,000 in compensatory, punitive, and liquidated damages, but the jury awarded him only $185,000 in compensatory damages, and he prevailed on only three out of his nine claims).

## III. PRE-JUDGMENT INTEREST

Plaintiff requests pre-judgment interest on her back pay award for the previous seven years [Doc. 81 pp. 11, 13]. According to Plaintiff, "a district court may award pre[-]judgment interest to an award of backpay in accordance with general equitable principles" [*Id*. at 11 (citation omitted)]. Acknowledging that courts generally award pre-judgment interest at the rate fixated in 28 U.S.C. § 1961, Plaintiff requests that the Court apply state law and award 9.5% per year [*Id*. at 11–14].

Before considering the merits of Plaintiff's request for pre-judgment interest, the undersigned must determine whether her request is timely. Defendant asserts that Plaintiff's request should be construed under Rule 59(e) and is untimely because Plaintiff did not file a motion under Rule 59(e) within twenty-eight (28) days after the entry of judgment [Doc. 85 pp. 19–20]. Specifically, Defendant states, the Court entered the Judgment on March 21, 2023, and Plaintiff did not file her motion until April 20, 2023—thirty days after entry of the Judgment [*Id*.]. Plaintiff denies that her motion is untimely, arguing that her motion is governed under Rule 60, not Rule 59(e) [Doc. 87 p. 8].

"A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). And Rule 6(b)(2) prohibits extensions to this deadline.

Fed. R. Civ. P. 6(b)(2). A motion under Rule 60(a), however, can be filed at any time. *Pogor v. Makita U.S.A., Inc.*, 135 F.3d 384, 386 (6th Cir. 1998). Under Rule 60(a), "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice." Fed. R. Civ. P. 60(a).

It is well settled that "a post[-]judgment motion for discretionary pre[-]judgment interest constitutes a motion to alter or amend the judgment under Rule 59(e)." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989). There are two reasons for this rule. *Id.* "First, . . . pre[-]judgment interest 'is an element of [the] plaintiff's complete compensation.'" *Id.* (quoting *West Virginia v. United States*, 479 U.S. 305, 310, & 310 n.2 (1987)). "Second, unlike a request for attorney's fees or a motion for costs, a motion for discretionary pre[-]judgment interest does not 'raise issues wholly collateral to the judgment in the main cause of action.'" *Id.* (quoting *Buchanan v. Stanships, Inc.*, 485 U.S. 365, 368 (1988)). Instead, when making a determining on whether to allow pre-judgment interest, courts must consider "matters encompassed within the merits of the underlying action." *Id.* at 176. But in cases "where the language of the judgment awards interest as required by law but leaves the actual calculations for later," Rule 60 governs. *Pogor*, 135 F.3d at 388 (finding the plaintiff's request was governed under Rule 60(a) because "the court's original judgment explicitly included an award of statutory interest as 'allowable' under Michigan law" and "Michigan law mandates an award of pre[-]judgment interest"); *see also Kosnoski v. Howley*, 33 F.3d 376, 377 & 379 (4th Cir. 1994) (finding Rule 60(a) governed the timing of the plaintiff's request for pre-judgment interest because the judgment awarded the plaintiff compensatory damages, "plus any appropriate pre-judgment and post-judgment interest at the legal rate" (emphasis omitted)); *McNickle v. Bankers Life & Cas. Co.*, 888 F.2d 678, 679–80, 682

(10th Cir. 1989) (construing the plaintiff's request for pre-judgment interest under Rule 60(a) because the original judgment awarded damages "with interest thereon as provided by law" and the state statute required an award of pre-judgment interest).

The Judgment in this case states Plaintiff shall recover from Defendant "the total amount of $58,170.00, along with any interest as provided by law and any costs and fees allowed by the Court pursuant to Rule 58(e)" [Doc. 76 p. 1 (emphasis and footnote omitted)]. The Judgment does not explicitly reference "pre-judgment interest." And because an award of pre-judgment interest on backpay or Title VII damages is discretionary, Plaintiff's motion must be one made under Rule 59(e). *See Berry v. Stevinson Chevrolet*, 828 F. Supp. 827, 830 (D. Colo. 1993) (denying the plaintiffs' request for pre-judgment interest on their Title VII damages award as untimely under Rule 59(e), noting that an award of pre-judgment interest is discretionary).

Plaintiff states that she requested pre-judgment interest in her Complaint, but "*Pogor* . . . does not support [the] assertion that, 'where pre[-]judgment interest was originally requested in the Complaint, application of Rule 60 is appropriate.'" *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, No. 3:12-CV-00463, 2021 WL 1213161, at *3 (M.D. Tenn. Mar. 31, 2021) (citation omitted).

Given that Chief Judge McDonough entered the Judgment on March 21, 2023 [Doc. 76], and Plaintiff did not file her request until thirty days later, the undersigned recommends that it be denied as untimely. *See* Fed. R. Civ. P. 59(e).

## IV.    POST-JUDGMENT INTEREST

Plaintiff seeks a "formal finding of the applicable rate at which Plaintiff's post-judgment interest shall accrue, in order to avoid any dispute in this case, as Defendant has already initiated post-trial motion practice" [Doc. 81 p. 14]. Specifically, she "requests that the Court include a finding that the same rate it finds appropriate on Plaintiff's pre[-]judgment interest shall also be the applicable rate of post-judgment interest rate in this matter" [*Id*.].

The undersigned has recommended that Plaintiff's request for pre-judgment interest be denied. In any event, Plaintiff's request for post-judgment interest is governed under 28 U.S.C. § 1961.

## V.    CONCLUSION

For the reasons explained above, the undersigned **RECOMMENDS**[22] that the Chief District Judge **GRANT IN PART AND DENY IN PART** Plaintiff's Motion for Attorneys' Fees

---

[22]    Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).

and for Equitable Relief [**Doc. 80**]. The undersigned recommends that Plaintiff be awarded $164,021.60 in attorney's fees:

| Timekeeper | Time Billed | Reductions | Lodestar Hours | Rate | Total Award |
|---|---|---|---|---|---|
| Hall | 419.6 | 1.3 (withdrawn) 8.0 (depositions) 5.05 (clerical) 7.25 (travel)[23] 20.13 (response to summary judgment) | 377.87 | $290 | $109,582.30 |
| Irwin | 241.6 | 0.2 (withdrawn) 18.0 (depositions) 2.5 (clerical) 2 (travel time) 15.99 (response to summary judgment) | 202.91 | $230 | $46,669.30 |
| Costanzo | 107.2 | 14.0 (withdrawn) 1.0 (clerical) 4.5 (response to summary judgment) 10.0 (trial related activities) | 77.7 | $100 | $7,770 |

While Plaintiff is entitled to post-judgment interest under 28 U.S.C. § 1961, the undersigned recommends that her request for pre-judgment interest be denied.

Respectfully submitted,

Jill E. McCook
United States Magistrate Judge

---

[23] For ease of calculation, the undersigned has deducted 50% of the travel time, as opposed to deducting 50% of the hourly rate for traveling.

31